IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| TRAVIS GRANDISON, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Civil Action No. 1:07-cv-00754 (RMC) |
| WACKENHUT SERVICES, INC., | ) ) | |
| Defendant. | ) ) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S "REPLY" TO
DEFENDANT'S MOTION FOR PARTIAL DISMISSAL OR,
IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT[1]**

**I.   Introduction**

In response to WSI's Motion for Partial Dismissal or, in the Alternative, for Partial Summary Judgment, Plaintiff concedes that his due process claim is meritless. Reply at 1, n. 2.[2]  Moreover, he does not dispute that Section 301(a) of the Labor Management Relation Act preempts his breach of contract and good faith and fair dealing claims.  *Compare* Memorandum at 8 *with* Reply at 2-3.[3]

Instead, he contends that the Court should deny Wackenhut's Motion because (1) the Court can resolve his intentional infliction claim without consulting the WSI - United Union of Security Guards at the General Accounting Office

---

[1] Plaintiff terms his brief a "Reply."  But, it is his opposition to WSI's pending Motion. Plaintiff filed his Reply on June 4, 2007.

[2] Citations to Plaintiff's "Reply" are denominated "Reply at ___."

[3] Citations to Wackenhut's Memorandum of Points and Authorities in Support of its Motion for Partial Dismissal, or, in the Alternative, for Partial Summary Judgment, are denominated "Memorandum at ___."

LDR/202820.1

Headquarters Collective Bargaining Agreement (the "Collective Bargaining Agreement"); and (2) the Security Officer Handbook contains unspecified provisions that conflict with its at-will disclaimer.

Just a few points regarding Plaintiff's Reply merit comment.

## II.     Argument

### A.     The Court should Treat as Conceded the Facts that WSI Identifies in its Statement of Material Facts as to which there is No Genuine Issue

The District of Columbia Circuit requires strict compliance with Local Rule 7(h). *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 150 (D.C. Cir. 1996).[4] Rule 7(h), which is identical to Local Rule 56.1, provides as follows:

> Each motion for summary judgment shall be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue, which shall include references to the parts of the record relied on to support the statement. An opposition to such a motion shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement. . . . In determining a motion for summary judgment, the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.

Local Rule 7(h).

Local Rule 7(h) helps the Court to decide summary judgment motions efficiently and effectively.

> Requiring strict compliance with the local rule is justified both by the nature of summary judgment and by the rule's purposes. The moving party's

---

[4]     *Jackson* and other cases cited herein address Local Rule 7(h)'s predecessor: Local Rule 108(h). Those rules, however, are closely analogous. Accordingly, the cited decisions are completely apposite to this case.

> statement specifies the material facts and directs the district judge and the opponent of summary judgment to the parts of the record which the movant believes support his statement. The opponent then has the opportunity to respond by filing a counterstatement and affidavits showing genuine factual issues. The procedure contemplated by the rule thus isolates the facts that the parties assert are material, distinguishes disputed from undisputed facts, and identifies the pertinent parts of the record.

*Jackson*, 101 F.3d at 150-51, *quoting Gardels v. Cent. Intelligence Agency*, 637 F.2d 770, 773 (D.C. Cir. 1980).

Plaintiff has failed to carry his burden under the Rule. Rather, in response to WSI's Statement of Material Facts as to which there is No Genuine Issue, Plaintiff has submitted nothing. Accordingly, WSI submits that the Court should treat the facts that WSI cites in its Statement as conceded.

### B.  Plaintiff's Intentional Infliction Claim Fails as a Matter of Law

Plaintiff tries to avoid preemption under Section 301(a) by contending that the Court can resolve his intentional infliction claim without consulting the Collective Bargaining Agreement. In support, he relies upon *Brown v. Gino Morena Enters.*, 44 F. Supp. 2d 41 (D.D.C. 1999). His reliance, however, is completely misplaced.

Brown sued his employer -- Gino Moreno Enterprises -- for defamation, stemming from the Company's decision to have the police escort him from the premises. The company moved for summary judgment on the ground that Section 301(a) preempted his claim. The Court however, disagreed, holding that it could resolve Brown's claim without consulting the governing collective bargaining agreement.

> Plaintiff asserts that defendant Morena's act of having her escorted off its premises by military police at her termination in the presence of customers, coworkers, and others constitutes defamation because the mere presence of a police escort suggested to those present that she had done something unlawful or was creating a disruption. The question of whether such an impression was

> falsely given to those observing her departure and whether defendant Morena bore any fault for the creation of such an impression may be evaluated independently from the question of whether plaintiff's termination was justified pursuant to the collective bargaining agreement.
>
> Plaintiff may also intend to assert that defendant Morena's alleged communication to the military police that she was being disruptive constituted a separate defamatory act. Again, the relevant questions under the defamation analysis -- whether the alleged communication was false, defamatory, or published with some degree of fault, or whether such statements to police officers were privileged -- can be answered without reference to the collective bargaining agreement.

*Id.* at 51.

The opposite is true in this case. Plaintiff does not dispute that he grounds his intentional infliction claim upon the manner in which WSI exercised its right, under the Collective Bargaining Agreement, to discipline Plaintiff. *See* Statement ¶ 15; *Compare* Memorandum at 8-9 *with* Reply at 2-3.[5] So, the Court must consult the Collective Bargaining Agreement to determine whether it authorizes WSI's challenged disciplinary actions. Thus, the conclusion is ineluctable that Section 301(a) preempts Plaintiff's intentional infliction claim. *See McCormick v. AT&T, Techs.*, 934 F.2d 531, 537 (4th Cir. 1991), *cert. denied*, 502 U.S. 1048 (1992);[6] *Willis*

---

[5] Citations to WSI's Statement of Material Fact as to which No Genuine Issue Exists are denominated "Statement ¶ ___."

[6] Holding:

> If management's actions in disposing of the contents of McCormick's locker were authorized under the collective bargaining agreement, those actions could not simultaneously be considered 'outrageous and intolerable' under Virginia law. Thus, '[b]ecause [McCormick's] intentional infliction of emotional distress claim consists of allegedly wrongful acts directly related to the terms and condition of h[is] employment, resolution of h[is] claim will be substantially dependent on an analysis of the terms of the collective bargaining agreement under which [he] is employed.'" . . . Accordingly, preemption under § 301 is mandated.

*McCormick*, 934 F.2d at 537 (citations omitted).

*v. Reynolds Metals Co.*, 840 F.2d 254, 255 (4th Cir. 1988) (intentional infliction claim preempted since the alleged wrong "directly dealt with [the employer's] right pursuant to a collective bargaining agreement to conduct investigations into possible harassment of one employee by a co-worker and the associated right to confront the suspected employee").

Moreover, Plaintiff does not contest that he has failed to allege that WSI engaged in extreme or outrageous conduct. *See* Memorandum at 9-11. Indeed, on that point, Plaintiff's "Reply" is completely silent. Accordingly, Plaintiff's intentional infliction claim is doomed as matter of law, even if he could overcome Section 301.

### C.  Plaintiff's Contract Claim Fails as a Matter of Law

Plaintiff's contract claim also is doomed. Indeed, Plaintiff does not dispute that Section 301(a) preempts that claim. *Compare* Memorandum at 7-8 *with* Reply at 2-3. That, alone, merits an order dismissing it or a judgment in WSI's favor.

Plaintiff's contract claim also fails on the merits because the Security Guard Handbook, upon which he grounds his claim, makes clear that it is not a contract.

Plaintiff tries to avoid this problem by citing *Yesudian v. Howard Univ.,* 946 F. Supp. 31 (D.D.C. 1996), *aff'd in part and rev'd in part*, 153 F.3d 731 (D.C. 1998). Again, however, his reliance is misplaced.

Howard University terminated Yesudian. He responded by suing the University for breach of his contract as embodied in the University's employee handbook. And the jury returned a verdict in Yesudian's favor.

The University moved for a judgment as a matter of law or, in the alternative, for a new trial. In support, it pointed to 2 handbook provisions that disclaimed all contractual obligations. The Court, however, denied the University's motion.

It held that the handbook contained conflicting language as to whether it is a contract.

> Immediately preceding the statement that the handbook is not to be construed as a contract, appears the statement that the handbook is a 'policy statement intended to promote better understanding of what staff employees can expect from the University and what the University can expect from them in return.' In addition, the provisions in the handbook relating to termination of employment are phrased in such a manner as to lead an employee to believe that the University does not have unfettered discretion in its termination decisions. . . .
>
> Moreover, the handbook sets out a detailed grievance procedure and states that '[e]mployees of the University who are serving on Continuing Appointments are *entitled* to provisions of the Grievance Procedure, under the conditions as indicated herein.' . . . Nowhere does the manual state that a 'Regular employee' may be terminated at will and for no reason at all.

*Id*. at 34-35 (emphasis by the Court) (citation omitted).

And the Court concluded that resolving the conflict was a task for the jury.

*Id*.

Here, Grandison has pointed to *nothing* in the Security Officer Handbook that conflicts with its at will disclaimer. Plainly, he has pointed to nothing because no conflicting language exists. To the contrary, the Security Officer Handbook's discipline provision reiterates that employment with Wackenhut is at will.

> The following are not binding terms and conditions of employment. *The Company retains the absolute right to terminate any employee at any time with or without good cause*.

Handbook § 2.15 (emphasis added).

Surely, Plaintiff's contract claim cannot survive in these circumstances. *See Futrell v. Department of Labor Federal Credit Union,* 816 A.2d 793 (D.C. 2003);[7] *Sokos v. Hilton Hotels Corp.*, 283 F. Supp. 2d 42 (D.D.C. 2003).[8]

---

[7] Holding:

The trial court's legal conclusion that the May 1998 Employee Guidebook did not create an implied employment contract is also supported by the evidence. The Guidebook clearly states in boldfaced print that it 'does not constitute an expressed or implied employee contract,' and also provides that '[e]mployees may terminate their employment with the credit union any time, for any reason, and may be terminated by the credit union any time, for any reason, with or without notice.' The inclusion of such unambiguous language and the lack of any specific preconditions in the Guidebook that must be met before employment will be terminated supports the conclusion that Futrell's arguments [sic] is without merit and summary judgment was properly granted.

*Futrell*, 816 A.2d at 806.

[8] Holding:

Here, the Hilton's Handbook not only contains the at-will employment language, but begins with a section entitled 'Purpose of Handbook[,]' which states that '[t]he contents of this Handbook are presented as a matter of information only and are not to be understood or construed as a promise of contract or of permanent employment between the Hotel and its team members.' . . . As in *Futrell,* this Court finds that the Hilton Handbook did not constitute an express or implied contract.

*Sokos*, 283 F. Supp. 2d at 49 (citation omitted).

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in WSI's opening Brief, WSI submits that the Court should dismiss, with prejudice, Plaintiff's contract, good faith and fair dealing, intentional infliction, and due process claims. In the alternative, WSI submits that the Court should enter a judgment in WSI's favor as to these claims as a matter of law.

> Respectfully submitted,
>
> ARENT FOX LLP
>
> By:        /s/ Kristine J. Dunne
> Henry Morris, Jr. (Bar No. 375894)
> Kristine J. Dunne (Bar No. 471348)
> 1050 Connecticut Avenue, N.W.
> Washington, D.C. 20036-5339
> (202) 857-6000/Telephone
> (202) 857-6395/Facsimile

Dated: June 25, 2007        *Counsel for Wackenhut Services, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 25th day of June, 2007, she caused a copy of the foregoing Defendant Wackenhut Services, Inc.'s Reply to Plaintiff's "Reply" to Defendant's Motion for Partial Dismissal or, in the Alternative, for Partial Summary Judgment, to be transmitted via electronic filing to the following:

>Jay Schiffres, Esq.
>700 E Street, SE
>Washington, D.C. 20003
>Telephone: (202) 383-3991
>Facsimile: (202) 383-3998
>Email: jschiffres@aol.com


>   /s/ Kristine J. Dunne
>Kristine J. Dunne