UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| TRAVIS GRANDISON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>WACKENHUT SERVICES, INC., )<br>)<br>Defendant. )<br>) | Civil Action No. 07-754 (RMC) |

### MEMORANDUM OPINION

Before the Court is a Motion to Dismiss or, in the Alternative, for Summary Judgment, filed by Defendant Wackenhut Services, Inc. Wackenhut argues that several of the causes of action that Plaintiff Travis Grandison raises in his Complaint are preempted by Section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a) ("LMRA"). Wackenhut further argues that the Complaint fails to allege facts sufficient to support Mr. Grandison's intentional infliction of emotional distress and due process claims. Mr. Grandison concedes that his due process claim fails as a matter of law but otherwise opposes the motion. The Court agrees with Wackenhut and will grant the motion for partial dismissal.

### I. FACTUAL BACKGROUND

Travis Grandison is an African American male who was formerly employed by Wackenhut as a Special Police Officer at the General Accounting Office in Washington, D.C. Compl. ¶¶ 3, 9. Mr. Grandison was hired in April 2005 and, beginning sometime in that year, he alleges that he

> experienced harassment from an African American supervisor and other officers and officials of Defendant which included but was not limited to improper and false allegations about [Mr. Grandison's] dress, overlooking acts

>of female officers which should have resulted in discipline, making up rules that applied only to [Mr. Grandison], intentionally interfering with [Mr. Grandison's] right to leave work, being sent home without pay for trumped up reasons including not being properly dressed in uniform, allegedly sleeping on the job, intentionally not taking authorized breaks, attempts to have other officers write disparaging remarks concerning [Mr. Grandison], being deprived of taking necessary courses which resulted in one of his required certifications, unfounded threats of discipline, lies concerning [Mr. Grandison] being argumentative or verbal with his supervisor, intentional provocation by supervisor and others in order to terminate [Mr. Grandison] and different treatment based on his education.

*Id.* ¶ 10.

Mr. Grandison complained to his superiors about these alleged acts of harassment, but on March 1, 2006, his superiors notified him that his allegations were not supported by the record. *Id.* ¶¶ 11-13. On the same day, Mr. Grandison contends that he "was physically assaulted on the premises of Defendant by his former supervisor." *Id.* ¶ 14. On March 10, 2006, Mr. Grandison received two disciplinary reports, which he alleges "were intentionally tailored by management to make it appear that they were second and third offenses." *Id.* ¶ 15. Mr. Grandison avers that the bases for the disciplinary reports were "contradictory and misleading" and that he was "threatened with termination." *Id.* On March 13, 2006, Mr. Grandison filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 17. Three days later, Mr. Grandison was suspended for five days for "alleged violation of security procedures and regulations." *Id.* ¶ 18. The very next day, Mr. Grandison received another notice of suspension, this time for three days, based on his "alleged tardiness or failure to observe assigned work hours." *Id.* ¶ 19.

On April 2, 2006, Mr. Grandison was allegedly "injured at work when a [f]reight [e]levator crashed on his head causing injuries to his head, neck, back and shoulders." *Id.* ¶ 21. He was cleared to return to work on April 30, 2006, *id.* ¶ 22, and, on that day, Mr. Grandison "started

a part time position with Startech Security Company at the National Building [M]useum located in Washington, D.C.," *id.* ¶ 23.[1] Mr. Grandison contends that during May 2006, representatives of Wackenhut made "inappropriate inquires" about the status of his part-time work at Startech, including allegedly harassing a Startech supervisor and inferring that Wackenhut would bring legal action against Mr. Grandison and Startech. *Id.* ¶ 25. On May 3, 2006, K. A. Conry, Wackenhut's Vice President and General Manager, notified Mr. Grandison that he was being suspended for five days "for willful insubordination and another 3-5 days for not wearing his hat and tie on April 2, 2006 [the day of his injury]. [Mr. Grandison] was informed that dismissal was recommended because of the May 3, 2006 suspension." *Id.* ¶ 26. One week later, Mr. Grandison filed an EEOC complaint alleging retaliation. *Id.* ¶ 30. On May 25, 2006, Mr. Grandison "was terminated . . . on the basis of willful insubordination." *Id.* ¶ 32.

      Mr. Grandison filed this action on March 23, 2007, in D.C. Superior Court. The Complaint contains causes of action for race and sex discrimination, retaliation, and discriminatory discharge in violation of the D.C. Human Rights Act, D.C. Code §§ 2-1401.01 *et seq. See* Compl., Counts I, II, III, and VII. The Complaint also asserts common-law causes of action for Intentional Infliction of Emotional Distress (Count IIIB),[2] Breach of Contract (Count IV), Slander/Defamation Per Se (Count V), Breach of the Covenant of Good Faith and Fair Dealing (Count VI), and Interference with Contract (Count IX). Finally, the Complaint contains a cause of action alleging that "Defendant violated the procedural due process of [Mr. Grandison.]" Compl. ¶ 66 (Count VIII).

---

[1] Although he reported for work at the GAO on May 2, 2006, he was not on the schedule to work that day. Compl. ¶¶ 22, 24.

[2] The Complaint erroneously contains two causes of action labeled "Count III." The Court refers to the Intentional Infliction of Emotional Distress Count as "Count IIIB."

Mr. Grandison bases his breach of contract and breach of the covenant of good faith and fair dealing on Wackenhut's Personnel Policy and Procedures manual, which he alleges to be a contract of employment. *See id.* ¶¶ 48-52, 60. Mr. Grandison bases his intentional infliction of emotional distress claim on "the actions of Defendant in terminating" him. *Id.* ¶ 46.

Defendant removed the Complaint to this Court on April 23, 2007, on the basis of diversity jurisdiction.[3] On April 30, 2007, Defendant moved to dismiss certain of the Complaint's common-law claims as well as the due process claim. That motion has now been fully briefed and is ripe for decision.

## II. LEGAL STANDARDS

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face, testing whether a plaintiff has properly stated a claim. Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). The court must treat the complaint's factual allegations — including mixed questions of law and fact — as true, drawing all reasonable inferences in the plaintiff's favor, *Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C. Cir. 2003); *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003), and the facts alleged "must be enough to raise a right to relief above the speculative level," *Twombly*, 127 S. Ct.

---

[3] Diversity jurisdiction in this Court is proper, under 28 U.S.C. § 1332, because (1) Mr. Grandison is a citizen of the District of Columbia and Defendant is a Florida corporation with its principal place of business in that State, and (2) the amount in controversy exceeds $75,000 (*see* Compl. at 11-12 (seeking compensatory damages of $75,000 and punitive damages of $500,000)).

at 1965.  But the court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations.  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  In deciding a 12(b)(6) motion, the Court may consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice."  *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citation omitted).  The Court may, however, in its discretion, consider matters outside the pleadings and thereby convert a Rule 12(b)(6) motion into a motion for summary judgment under Rule 56.  *See* Fed. R. Civ. P. 12(b); *Yates v. District of Columbia*, 324 F.3d 724, 725 (D.C. Cir. 2003).

### III.  ANALYSIS

Wackenhut moves for dismissal or summary judgment on Mr. Grandison's breach of contract, good faith and fair dealing, intentional infliction of emotional distress, and due process claims.  Mr. Grandison "submits with regard to the due process issue."  Pl.'s Reply to Def.'s Motion for Partial Dismissal Or, In the Alternative, For Partial Summ. J. ("Pl.'s Opp'n") at 1 n.1.  Accordingly, Wackenhut's motion will be granted with respect to Count VIII.

With respect to the other causes of action, Wackenhut's first argument is that they are preempted by Section 301 of the LMRA.  Def.'s Mem. of P. & A. In Support of Def.'s Mot. for Partial Dismissal Or, In the Alternative, for Partial Summ. J. ("Def.'s Mem.") at 6-9.  Under that statute, "[s]uits for violation of contracts between an employer and a labor organization . . . may be brought in any district court of the United States having jurisdiction of the parties."  29 U.S.C. § 185(a).  According to the Supreme Court, "§ 301 [is] a congressional mandate to the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor

contracts." *Int'l Bhd. of Elec. Workers, AFL-CIO v. Hechler*, 481 U.S. 851, 856 (1987) (internal quotation marks omitted). "Thus, questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort." *Id.* at 857 (internal quotation marks omitted). In order to carry out the goal of ensuring uniformity in federal labor law, the Supreme Court has held that Section 301 preempts any "state-law claim [that] is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract." *Id.* at 852-53 (internal quotation marks omitted). That is, whenever "resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement," Section 301 preempts the state-law claim. *Lingle v. Norge Div. of Magic Chef*, 486 U.S. 399, 405-06 (1988).

Wackenhut asserts that Mr. Grandison's position as a Special Police Officer was governed by a Collective Bargaining Agreement ("CBA") between Wackenhut and the United Union of Security Guards ("Union"). Def.'s Mem. at 3; Conroy Decl. Ex. 1 (CBA). Mr. Grandison does not dispute that his position was covered by the CBA. He states, however, that his common-law contract and good faith and fair dealing claims are not based on the CBA — they are based on "Defendant's Personnel Policy and Procedures," Compl. ¶ 48, which, without contradiction, Wackenhut interprets to mean its Security Officer Handbook, Def.'s Mem. at 3; Conroy Decl. Ex. 3. Thus, for purposes of preemption analysis, the question is whether Mr. Grandison can present claims based on the Handbook when the terms and conditions of his employment were negotiated by the Union and memorialized in the CBA.

The Court finds that Mr. Grandison's breach of contract and fair dealing claims are preempted. Under the terms of the CBA, to say nothing of the National Labor Relations Act, 29 U.S.C. §§ 151 *et seq.*, ("NLRA"), the Union is "the exclusive bargaining agent . . . for all full-time and regular part-time security officers and corporals employed by [Wackenhut] at the General Accounting Office Headquarters (GAO) in Washington, D.C." CBA at 2. The CBA also gives Wackenhut the "exclusive" right to "formulate and enforce appropriate Employer rules and procedures," "hire, suspend, . . . discharge, or discipline for cause," and "maintain discipline and efficiency of employees." *Id.* at 6-7. As is the norm, the CBA also contains a grievance and arbitration procedure. *Id.* at 11-14. Mr. Grandison's breach of contract and good faith and fair dealing claims arise from allegations that Wackenhut violated its contractual obligations with respect to "terminations, disciplinary actions and grievances." Compl. ¶¶ 51, 60. These claims were thus subject to grievance and arbitration under the CBA. Mr. Grandison's common-law claims implicitly assert that his rights under the Handbook are superior to Wackenhut's rights under the CBA. The only way such allegations could be adjudicated would be to interpret Wackenhut's reserved management rights under the CBA. Therefore, those claims are preempted. *See, e.g.*, *Symonds v. Day & Zimmerman, Inc.*, 981 F.2d 1255, 1256 (5th Cir. 1992) ("[P]olicy manuals issued pursuant to a CBA are subsumed by the CBA to the extent they would 'defeat or delay the procedures prescribed by the NLRA' and therefore are preempted by § 301."); *Olguin v. Inspiration Consol. Copper Co.*, 740 F.2d 1468, 1474 (9th Cir. 1984) (holding that an employee's claim that a written policy manual constituted an independent contract between him and his employer was "clearly preempted" under Section 301), *overruled on other grounds by Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202 (1985); *see also Chmiel v. Beverly Wilshire Hotel Co.*, 873 F.2d 1283, 1285-86 (9th Cir.

1989) (holding that a breach of contract claim based on an alleged independent agreement between employee and employer is preempted by Section 301 if it conflicts with the terms of a collective bargaining agreement).

Mr. Grandison argues that "an implied contract may arise from the language of an employee handbook," and dismissal of his claims based on Wackenhut's Security Officer Handbook is improper because "whether an employee manual creates contractual rights in the employee is an issue for the jury." Pl.'s Opp'n at 3. This argument misses the point; the question is not whether the Handbook could constitute a contract but whether it would be necessary to consult and interpret the CBA to determine whether Wackenhut's disciplinary actions and discharge breached some agreement or duty between Wackenhut and Mr. Grandison. Wackenhut's rights under the CBA are obviously central to that question. As a result, Section 301 preempts Mr. Grandison's breach of contract and fair dealing claims.

With respect to Mr. Grandison's claim for intentional infliction of emotional distress, the Court finds it unnecessary to conduct a preemption analysis because the Complaint clearly fails to allege sufficient facts to support the claim. To prevail on a claim for intentional infliction of emotion distress, Mr. Grandison must prove: "(1) extreme and outrageous conduct on the part of [Wackenhut], which (2) intentionally or recklessly (3) cause[d] [Mr. Grandison] severe emotional distress." *Than v. Radio Free Asia*, 496 F. Supp. 2d 38, 51 (D.D.C. 2007) (internal quotation marks omitted). "In the employment context, [the] conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Id.* (internal quotation marks omitted). Count IIIB merely alleges, in conclusory fashion, that Wackenhut's actions in terminating Mr. Grandison were "extreme and outrageous and willfully performed [and] caused severe emotional

distress to [Mr. Grandison.]" Compl. ¶ 46. These are, of course, mere "labels and conclusions" that are insufficient to meet Rule 8's pleading requirements. *Twombly*, 127 S. Ct. at 1965. The Complaint's other allegations (detailed in Section I above), read in the light most favorable to Mr. Grandison, do not rise to the level of extreme and outrageous conduct that could support an intentional infliction of emotional distress claim.[4]

### IV. CONCLUSION

For the foregoing reasons, Wackenhut's motion will be granted, and Count IIIB, Count IV, Count VI, and Count VIII will be dismissed.[5] A memorializing order accompanies this Memorandum Opinion.

DATE: September 25, 2007
/s/
ROSEMARY M. COLLYER
United States District Judge

---

[4] The Court notes that Mr. Grandison failed to submit a statement of material facts pursuant to Local Rule 7(h). Thus, Wackenhut's statement of facts is uncontested. Further, his Opposition is silent as to Wackenhut's argument that the Complaint failed to allege that Wackenhut engaged in extreme or outrageous conduct. For these reasons as well, Count IIIB must be dismissed.

[5] The remaining Counts in the Complaint are Counts I (Race Discrimination under DCHRA), II (Sex Discrimination under DCHRA), III (Retaliation under DCHRA), V (Slander/Defamation), VII (Discriminatory Discharge under DCHRA), and IX (Interference with Contract).