# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| TRAVIS GRANDISON | ) | |
| | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| v/ | ) | Civil Action No. 1:07-EV- |
| | ) | 00754(RMC) |
| | ) | |
| WACKENHUT SERVICES, INC. | ) | |
| | ) | |
| **Defendant** | ) | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**ISSUE: RETALIATION**

Defendant contends that Plaintiff has failed to show that material facts are in issue with regard to retaliation by Defendant Wackenhut.  The facts, however, simply do not support their contention and at a minimum make this issue a material issue which should be litigated.

On March 13, 2006, Plaintiff filed a discrimination complaint alleging racial discrimination (Ex. 1). On March 16, 2006, Plaintiff was suspended for five (5) days for an alleged violation of procedures and regulations.  On March 17, 2006, Plaintiff was suspended for three (3) days for alleged tardiness or failure to observe assigned work hours.  On May 11, 2006, Plaintiff filed a discrimination complaint alleging retaliation (Ex 2).  By letter dated May 22, 2006, Plaintiff was informed that he would be terminated effective May 25, 2006 (Ex 3).

By virtue of the fact that the adverse actions were in such close proximity to the filing of the discrimination complaints, a presumption is raised in favor of the Plaintiff.  Such  close temporal proximity between his protected activity and his suspensions and ultimate termination creates a causal connection and presents a prima facie case of retaliation in violation of the  District of Columbia Human Rights Act. Regan v. Grill Concepts-D.C., Inc., 338 F. Supp. 2d 131, 2004 U.S. Dist. LEXIS 19908 (D.D.C. 2004).  Moreover, it is pure conjecture on the part of Defendant to argue that since the first discrimination complaint was file stamped "received" on a certain date that therefore all acts which preceded the file stamped copy can not be considered.

Of significance is that Defendant was made aware of the fact that Plaintiff was going to file a discrimination complaint.   As stated in Sauers v Salt Lake County 1 F 3d 1122,(1993)  Action taken against an individual *in anticipation* of that person engaging in protected opposition to discrimination is no less retaliatory than action taken after the fact; consequently, this form of pre-emptive retaliation falls within the scope of 42 U.S.C.S. § 2000e-3(a). In the case at bar, Defendant was put on notice that a complaint(s)  of discrimination was more then likely and then continued to retaliate against him in an effort to have him quit or be terminated.

By way of example, Exhibit 4 is a document sent by Plaintiff to Defendant.  It is dated *November 28, 2005.*  The first paragraph should have placed Defendant on notice that a discrimination complaint was being contemplated and that Plaintiff was engaged in protected activity.   Defendant stated:

> I took the time out, and will continue to take the time to
> document every incident that I feel is negatively driven.  In

> **addition I will document every incident where I feel like I am being** *singled out and where other officers and supervisors do not have to comply (emphasis supplied).*

By statement dated  December 19, 2005 (Ex. 5)  Plaintiff notes that since the November 28, 2005 communication nothing had changed and in fact his situation had become worse.  Plaintiff pointed out a number of instances of harassment and unequal treatment.  He stated that he was the "…the only officer to be sent home in the year of 2005 for uniform issues." Plaintiff gives other examples of disparate treatment in this document.

By statement dated February 27, 2006 (Ex.6) Plaintiff reported that he understood that in response to his first two communications he would be subject to heavy scrutiny by management.  Indeed, Plaintiff states that "I have been experiencing this scrutiny and workplace retaliation on the part of management every (sic) since. He goes on to state the following:

> I am also concerned with the lack of response and lack of change that hasn't occurred.  I have spoken to management on several occasions outside of the notices, and pleaded with them to step in and correct the inconsistencies and problems.  Nothing seems to have been done…it has become clear that I am a target…What I want to know is why hasn't anything been done? I want to know why I continue to be treated differently while at the same time doing everything I am asked.  Also I would like to know what are your policies and procedures when an employee has harassment and workplace retaliation claims.

Plaintiff goes on to state that Officer Johnson informed him that Plaintiff's supervisor had told  Officer Johnson that "Grandison had better cross all his T's and dot all his I's because I have to something for him (sic).

By statement dated March 18, 2006 (Ex 7)  Officer Tim Johnson notes that Plaintiff had been experiencing harassment and retaliation on the job.

He notes that the situations and punishment are unique only to Plaintiff and one other officer.  Officer Johnson also points out that the retaliation was known to everyone and that there were a number of individuals involved. Officer Johnson also notes that he has witnessed attempts by supervisors "*…to set Grandison up…*" Moreover, Officer Johnson states that he had overheard supervisors talking about "how they are going to get Grandison and he better watch his back".  Finally, he reports that Mr. Carrol, then Project Manager at the GAO location, ignored the situation to the point that Grandison was assaulted.

After listing other incidents of discriminatory behavior and harassment, Plaintiff states that this behavior had been going on for about four (4) months and that  he knew he was being singled out, that management wants him to "crack" under the pressure of retaliation and harassment.

On March 1 2006, (Ex. 8) Chuck Carrol, the Project Manager, allegedly replied to Plaintiff's allegations of reprisal by asserting that there is is nothing that can be done since Plaintiff had failed to report the discrepancies "…as they occur but rather in groups over a long period of time…"  This is a transparent attempt to make Plaintiff jump through additional hoops in order to voice his complaints.

However, Plaintiff followed these vague instructions as best he could. On   March 2, 2006 he sent Management three communications (Ex9,10 & 11) reporting mistreatment and retaliation.

On the very same day that Mr. Carrol prepared his March 1, 2006 memorandum, Plaintiff was assaulted by his former supervisor. The officers supervisor's who attended the meeting were required to go to Metropolitan Police Headquarters to give statements and it was learned by Leroy Worsley, a former employee and union representative of Defendant that these officers lied and claimed that there was no assault ( Ex 12 )

On March 11, 2006 (Ex 13)  Plaintiff contacted Defendant concerning two re- written disciplinary reports and grievances. Plaintiff complained that these reports had been altered in favor of management.  He framed the issue as intentional inconsistencies and obvious manipulation by management.

As noted above, on March 13, 2006, Plaintiff filed his discrimination complaint with the D.C. Office of Human Rights alleging racial discrimination and retaliation.

By letter dated May 4, 2006, Plaintiff informed management that he was not being willfully insubordinate regarding the wearing of his hat and shoes.  He noted in the letter that management was trying to terminate him for petty uniform issues (Ex 14).

On May 11, 2006, Plaintiff  filed a charge of retaliation with the D.C. Office of Human Rights asserting retaliation.

By statement to Management dated May 12, 2006 (Ex15), Plaintiff informed  anagement that a Mr. Bodle of the GAO and other contracted employees had been harassing and intimidating his co-workers and management at his second job making inquiries as to his position.

By letter dated May 22, 2006 (Ex 16), Plaintiff was informed that he was being terminated effective May 25, 2006 based primarily on the fact that a video tape allegedly showed that his shirt collar was open, his tie was to one side and he was not wearing his hat. His transgressions were characterized as willful insubordination.  His former union representative has an entirely different view of the matter (Ex.17)

## CONCLUSION

The issue of retaliation is clearly in dispute and merits further litigation. Plaintiff has demonstrated that the Defendant was acutely aware of the fact for an extended period of time that he was exercising protected activity and the actions taken against him constituted reprisals.  In addition, the proximity of the two (2) discrimination Complaints filed and the adverse actions taken against Plaintiff clearly raises issues of fact and law which should be decided by a fact finder.

Lastly, the issue of whether or not Plaintiff suffered in a hostile work environment is clearly one for the fact finder. Plaintiff submits that he suffered unwelcome conduct in the form of discriminatory harassment for the majority of his employment with Defendant.

Respectfully submitted

_____/s/_____
Jay Schiffres (185488)
700 E Street, S.E.
Washington, D.C. 20003
(703) 383-3991