### THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLULMBIA

| | |
|---|---|
| **Travis Grandison** | : |
| | : |
| **Plaintiff** | : |
| | :    **Civil Action No.107-cv-00754(RMC)** |
| | : |
| | : |
| **v.** | : |
| | : |
| **Wackenhut Services Incorporated** | : |
| | : |
| **Defendant** | : |
| | **:** |

## PLAINTIFF'S ERRATA DOCUMENT

The undersigned mistakenly did not attach exhibits to Plaintiffs reply to Defendants motion for summary judgment and respectfully requests that the attached exhibits be accepted for filing.

_____/s/_____
**Jay Schiffres, Bar #185488**
**700 E Street, S.E.**
**Washington, DC 20003**
**(703) 383-3991**

EEOC FORM 131 (5/01)

M. ALDRICH

# U.S. Equal Employment Opportunity Commission

| | PERSON FILING CHARGE |
|---|---|
| Patricia Marmon<br>Director EEO Programs<br>THE WACKENHUT CORP.<br>4200 Wackenhut Drive<br>Palm Beach Gardens, FL 33410 | **Travis J. Grandison** |

THIS PERSON (check one or both)

[X] Claims To Be Aggrieved

[ ] Is Filing on Behalf of Other(s)

EEOC CHARGE NO.

**570-2006-00578**

## NOTICE OF CHARGE OF DISCRIMINATION
### (See the enclosed for additional information)

This is notice that a charge of employment discrimination has been filed against your organization under:

[X] Title VII of the Civil Rights Act

[ ] The Americans with Disabilities Act

[ ] The Age Discrimination in Employment Act

[ ] The Equal Pay Act

RECEIVED MAR 28 2006 HUMAN RESOURCES

The boxes checked below apply to our handling of this charge:

1. [X] No action is required by you at this time.

2. [ ] Please call the EEOC Representative listed below concerning the further handling of this charge.

3. [ ] Please provide by _____ a statement of your position on the issues covered by this charge, with copies of any supporting documentation to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

4. [ ] Please respond fully by _____ to the enclosed request for information and send your response to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

5. [ ] EEOC has a Mediation program that gives parties an opportunity to resolve the issues of a charge without extensive investigation or expenditure of resources. If you would like to participate, please say so on the enclosed form and respond by _____ to _____ If you DO NOT wish to try Mediation, you must respond to any request(s) made above by the date(s) specified there.

For further inquiry on this matter, please use the charge number shown above. Your position statement, your response to our request for information, or any inquiry you may have should be directed to:

| | |
|---|---|
| **Tracy Smalls,**<br>Secretary.<br>_EEOC Representative_<br>Telephone  **(202) 419-0734** | **Washington Field Office - 570**<br>**1801 L Street, N.W.**<br>**Suite 100**<br>**Washington, DC 20507** |

Enclosure(s): [X] Copy of Charge

### CIRCUMSTANCES OF ALLEGED DISCRIMINATION

[X] RACE  [ ] COLOR  [ ] SEX  [ ] RELIGION  [ ] NATIONAL ORIGIN  [ ] AGE  [ ] DISABILITY  [X] RETALIATION  [ ] OTHER.

See enclosed copy of charge of discrimination.

| Date | Name / Title of Authorized Official | Signature |
|---|---|---|
| Mar 23, 2006 | Dana Hutter,<br>Director | _Dana R Hutter_ |

GRANDISON 00509

started back to post. He yelled "Grandison, go that way", pointing towards the direction of the cafeteria. I turned looked, he then yelled again "go that way". I said nothing and went in the direction of the cafeteria. In addition to the officers on post 3 &4, Officer Bowman was also present.

11-24-05   At approximately 1030 the assistant COTAR came in the building carrying cookies. After he left Woods & Foster came out and asked was our phone working. The phone hadn't been working since I arrived @ approximately 0520. Officer Gilliam from 1st relief informed me of this and said he was going to let the command center know, upon leaving. Me and officer Driffen were discussing personal finance and I had drawn up a mock income statement showing her a way to better view her numbers. She had been writing down her figures on a napkin. As Foster was fumbling with the phone he states to me that I need to "put that up while the COTAR is in the building". He made no comment to Driffen about her figures at all. The COTAR had already left the building. Foster, correcting me was not a problem, but his tone and obvious ignoring of Driffen's notes, but pointing out mine made his point clear to me.

11-24-05   Checked schedule on 11-23-05 for work on 11-24-05, and schedule listed post 6 @ 0530-1330. I reported to work @ approximately 0518. I was informed by Sgt. Collins that I didn't have to arrive until 0600. The schedule listed 0530 until 1330 but I was told I should have been at work @ 0600 until 1400. Due to my issues with tardiness, schedule inconsistencies are of concern to me. If I had reported to work at 0600 I am sure it would have been by the book to hold me accountable for being tardy due to the fact that the schedule states 0530-1330.

11-26-05   Assigned to post 12 on 10/31/05, 11/1/05, and 11/2/05.
            Assigned to post 11 on 11/5/05, 11/6/05.
            Assigned to post 12 on 11/26/05, 11/27/05.
            Assigned to post 11 or 12 on 12/3/05, 12/4/05.

            I was under the impression that officers were to rotate post.

11-27-05   Went into command center to return weapon for break. I, Mr. Holly, and Foster were the only people in the C.C. As I was approaching the gun room I noticed Foster looked up; I guess to see who it was. When I got 2 feet from the gun room door he hadn't gotten up to unlock the door so I could return my weapon. I stated to him that "I need to drop". He then got up and unlocked the door and went inside the gun room. While I was unloading my gun, Foster states "that I shouldn't say I need to drop, I should....."then he stopped said "you know what, fuck it" and then mumbled more words under his breath. I never said a word. The only words I spoke were "I need to drop".

11-28-05   Went on break and proceeded to gun room to drop weapon. Upon leaving Foster in the presence of Sgt. Collins, and Sgt. Richardson tells me that I need to fix my

GRANDISON 00018

From: Travis Grandison
Date: 12-19-05
Fax: 410-945-7100

This is the second notice that I have had to send out about my treatment and situation at the GAO building. My first notice was sent out to the supervisors and the project manager on 11-28-05. The first notice will accompany this notice as well as dates and time that situations have occurred. Since the first notice however there has been no change in what goes on at work and the situation has gotten worse.

On a daily basis I am asked by Foster to show my SPO commission. I am the only officer asked by Foster.

On a daily basis I am told by Foster that something is wrong with my uniform. I have been told by Foster that if I don't take my uniform to the cleaners to be cleaned then I would be sent home. I was even told by Foster that I need to have a deeper crease in my pants and that I need to iron my shirt or else he would send me home. On this day I was wearing a sweater and he could only see the collar of my shirt, and my pants have a permanent crease as do most uniform slacks.

I am the only officer to be sent home in the year of 2005 for uniform issues. I was once sent home and lost pay for not having paten leather shoes on while on post in the building. On this day there was at least one supervisor who did not have the proper shoes on and the officer who was assigned to post with me had on boots also, but I was the only officer sent home. No warning just sent home without pay. I was sent home recently for having cuffs in my pants. I have been wearing these pants since I started and I am not the only officer who has cuffs in there pants. I have never been told anything about cuffs in my pants, yet I was sent home by Foster for cuffs in my pants. No warning just sent home without pay. I have been threatened numerous times to be sent home for minor issues such as Foster saying my shirt has wrinkles or my shoes are dirty. No one else is treated this way and it has become so prevalent, that it is easy to see that it is provoking and a classic example of workplace harassment.

I have been written up for calling off of work. Not because of habitual behavior, but because I attended a CPR, First-Aid class. My baton certification had already expired because I had not been scheduled for a class. I took it upon myself to get the certification completed. While I was at the baton certification I found out that a CPR and First-Aid class was scheduled for the following week. I told a supervisor that I am taking off next week to take this class. He stated that he would have to check with Carroll. He came back to me and stated that Carroll had denied my request because they didn't want me to be off of work for two Saturdays in a row, and that Carroll would be scheduling me for a class. After my baton expired I did not have any confidence in being scheduled before my CPR and First Aid expired. I questioned the supervisor to no end. Then I phoned Carroll and left a message on the Wednesday before the Saturday class and asked him to

2025123438            GAO 1155

04:48:35 p.m.      03-03-2006        8/18

when I am not the only officer on post and these items can be found on post at anytime. Carroll also asked me "why I was bringing these issues to him"? This question leads me to the conclusion that my situation with Foster and my label as the officer to blame will continue. In addition, during the meeting Carroll stated that he would pay me for being sent home on Saturday.

Ex 3 2

To: Mr. Carroll, Ruthie Rouse
From: Travis Grandison
Re: Harassment by Management/Foster
Date: 2/27/06
Fax: 410-945-7100

     This is the third notice that I have had to send out about my treatment and situation at the GAO building. I understand that in response to my first two notices I would be subject to heavy scrutiny with management. I have been experiencing this scrutiny and workplace retaliation on the part of management every since. I am also concerned with the lack of response and lack of change that hasn't occurred. I have spoken to management on several occasions outside of the notices, and pleaded with them to step in and correct the inconsistencies and problems. Nothing seems to have been done. Below are more incidents that have occurred over the past month regarding me and management and it has become clear that I am a target and being treated fairly and just left alone maybe impossible at this point. What I want to know is why there hasn't been anything done? I want to know why I continue to be treated differently, while at the same time doing everything I am asked. Also I would like to know what are your policies and procedures when an employee has harassment and workplace retaliation claims.

On a daily basis I am asked by Foster to show my SPO commission. I have waited to witness if Foster would ask other officers to show their commission and he hasn't. This was addressed months ago and nothing has changed.

2-26-06 Foster arrived to work late, approximately 25 minutes late. Foster did not have on a gun belt, and he did not have on the proper footwear. In addition Foster had a newspaper on his post and was reading it on post. I was sent home without any cause or reason at all. I want to know why I was sent home and the justification behind me being sent home. If the cause or justification is not valid then I ask to be compensated for being sent home. I can only speculate that I was either sent home for not having on patent leather shoes (which I put on after I was told that I couldn't wear the black leather shoes I had on, and there were plenty of officers including Foster who were not in compliance and I made this clear to Foster) or that I was sent home because Foster assumed that I and three other officers were talking about him concerning proper policy and procedure. I do not understand this conclusion because he was not present during the entire discussion and his name or title was never mentioned. In any event I was asked to drop my weapon, which I did, and then I was asked to leave the building.

     Per my conversation with Mr. Carroll on 2-27-06 I was told that I had been sent home for being argumentative and/or verbal with Foster. The only words I spoke to Foster were questioning him as to why I had to wear certain shoes, while everyone else including himself doesn't have to wear certain shoes. I was not sent home during the time I questioned Foster concerning the wearing of improper footwear. I was sent home approximately 15 minutes later while I was outside of the command center on post 5/6 and I was not talking to Foster, at

GRANDISON 00024

Foster, or about Foster. In addition I did put on my patent leather shoes and assumed my post. Also, Foster wanted to write me up for being late to work. I was not late. I came to work and had on black leather shoes. I walk to work everyday. The patent leather shoes are very uncomfortable. I do not understand how I can be written up for being late, and sent home for not having on the proper shoes, which I did put on before I assumed my post and or being argumentative when all I did was question Foster as to the fairness of his decision. If I am not to be paid, then everyone who has ever had on the improper uniform should not be paid. Not just for 2-26-06 but for everyday that an officer or a supervisor did not comply with the policies and procedures. It is common place that officers and supervisors on a daily basis come into the command center without their entire uniform on, not just the incorrect shoes, but without shirt, without hat, and jacket. They sign in and then return to their automobiles and/or the break room and finish getting dressed. Foster of course is one who participates in this activity on a daily basis.

2-4-06   I was informed by Officer Johnson that Foster had told him that "Grandison had better cross all his T's and dot all his I's because I have to something for him." This statement is nothing less than Foster admitting to be involved with workplace retaliation against me.

2-5-06   Foster asked me to give post 11&18 lunch breaks. I was assigned to post 18, which is an outside rover post. I glanced at Officer Johnson and he glances back. I then ask Foster "what post did you say"? He states post 11&12. I say "ok". While I was breaking post 11&12 Foster comes out to the booth and ask me why I was in the booth. I stated to him "you told me to break 11&12. He asked how long has the officer been on break. I stated he has another 30 minutes. Then he states I told you to break 11or12. I stated "no you didn't". He stated "I did". I then asked Officer Johnson "what post did Foster instruct me to break" and Johnson stated "I heard you, meaning Foster say break 11&12". I believe and have reason to believe based on past comments made by Foster that this was an attempt to manipulate a situation so that I would appear to have abandoned post, etc. This case was another example of verbal communication between I and Foster due to Foster not following correct procedures, and he exhibiting incompetence on the job. In addition on two occasions I witnessed Foster on post 11&12 without his gun belt on during the morning of 2-5-06.

2-7-06   Upon returning from break and entering the command center, I stated to Foster that "I need to pick up" referring to picking up my weapon and rounds as I am returning to post. He gets up and asks "can I talk to him and say something else other than "you need to pick up". Upon Foster beginning to work here and on several occasions he made it clear that I needed to say to him that "I needed to pick". This is what I told him, in response to his statement to me. This is an example of Foster trying to provoke or instigate some type of action from me. I feel this is another example of the harassment/workplace retaliation I receive, on a day to day basis. Captain Trickey and Mr. Holly were present in the command center.

GRANDISON 00025

Mar. 18 2006

To whom it may concern

    I Officer Johnson am writing on behalf of Officer Grandison and the harassment and retaliation he is experiencing at work. During the time I have worked with officer Grandison, he has experienced situations and punishment that is unique only to him and one other officer who is experiencing the same type of treatment (officer Gilliam), and who also has reported being assaulted by a supervisor.

    On March 4, 2006 I witnessed Felton Foster (former supervisor) patrolling around the GAO building. I spoke with him and he made threatening remarks directed towards officer Grandison. He stated that he had beat Grandison's ass during the meeting and was "looking for Grandison, he was going to whoop his ass, and that everytime he sees Grandison, he is going to fuck him up". Foster also said that Officer Mills said Grandison was sitting on the stairs crying after he punched Grandison in the face, and that Grandison was crying like an old bitch, and then stated ask Mills. To my knowledge Foster had been fired on March 1, 2006. And on March 1, 2006 it was common knowledge, and I had been informed by a number of officers in the GAO building that he assaulted Grandison during a mandatory meeting.

    This situation should have never gotten to this point. Foster had made it clear that he was going to harass Grandison every moment he could. It had even gotten to the point that others in the command center were in agreement with Foster and participated in the unfair treatment. This treatment was no secret at work, and everybody is aware of what was going on and what is going on right now. It seems that when Grandison complained to management, nothing was done and Foster was allowed to continue terrorizing Grandison. Grandison to my knowledge never said anything, but I suggested and am hoping that he kept records because the type of treatment he suffered was a daily occurrence and completely uncalled for.

    Grandison has been sent home without pay a number of times for reasons that no other officer, even though they are in violation are never even written up for. I have witnessed attempts by supervisors to set Grandison up, by popping up on a post and saying that someone saw him on the phone and that someone saw him reading something. I have even witnessed Grandison being told he cannot stand by post 11/12 which is a outside booth post, when he is on post 18 which is an outside rover post. The entire perimeter of the GAO building is his post. I have even overheard supervisors talking about "how they are going to get Grandison and he better watch his back". I've observed how Carroll has ignored the situation, and allowed this to continue up to the point that an assault took place. If you have any questions/concerns, please feel free to contact me.

Officer Tim Johnson
3/648-1080

3/18/6

**WACKENHUT**

SERVICES INCORPORATED

# MEMORANDUM

Date:  1 March 2006

From:  Chuck Carroll/Project Manager, GAO

To:  Ofc Grandison

In your letter dated 2/27/06 you said that this is the third notice that you were sending out about your treatment and situation at the GAO building.

I do not concur with your statement that you have provided three notifications about your treatment at GAO.  In actuality you provided a notification on 28 November.  Afterwards I called a meeting with yourself and the Union Steward, addressed your disciplinary problems of tardiness and proper wear of the uniform, which you agreed you were at fault for and the letter about unfair treatment by Sgt Foster.  Having identified that you were removed from site because of wearing pants that were cuffed, and no action had been taken against other officers that were also wearing cuffed pants and unauthorized shoes.  You were compensated for that day of work. I then addressed your concerns with Sgt Richardson, Captain Trickey and Sgt Foster ensuring that they understood that all disciplinary action was to be fair and equal across the board.  All personnel were briefed on the proper uniform requirements and timeliness.

Your second letter dated 31 January had nothing to do with your treatment but allegations about Sgt Foster's behavior (sleeping/out of uniform).  Your allegations were investigated, statements gathered and all pertinent information forwarded to WSI/NCR HQ for action.  Pending.

On 26 February Sgt Foster notified me that you had arrived for work out of compliance with uniform standards and when addressed that you became loud and disruptive.  He had sent you home across the street to obtain proper footwear in accordance with the contract.  Later when he provided you keys to Post 16, you made comments in front of other officers that Sgt Foster felt were disruptive in nature and insubordinate.  He decided it was best to remove you from the site rather than the situation escalating further.  He notified me of the action and I notified him to gather up statements from those personnel that witnessed the incidents.

You came in at 2230 on 26 February and notified Sgt Collins that you were not coming in to work but would take care of the situation with Sgt Foster, Sgt Collins let you know that your reason for calling off was not a valid excuse.  You and I spoke over the phone where you told me of being singled out by Sgt Foster and that you were doing up a letter which you presented to me at approximately 1630 hours, 27 February, 2005.  You agreed that you had been showing up to work with the wrong shoes and that you had to get the proper gear before signing on post making you late because you did not have the proper equipment required by contract when you first arrived.  Other officers have received write-ups from Sgt Foster as well.

You ask management to take action, but you fail to report the discrepancies as they occur but rather in groups over a long period of time, the last letter goes back a full month making it very difficult to validate the information except the times when personnel entered.  I cannot validate if

GRANDISON 00308

personnel were in the wrong uniforms, shoes, having personal belongings on post, etc. This greatly delays action being taken as I have to attempt to gather up information. I haven't found e officers willing to write statement that they were out of compliance and support your accusations.

In the future I ask that you please notify me as each incident occurs where you feel that you have been treated unfairly or harassed so that I can immediately address the situation. Each report is investigated but it does take time. If you feel that I have treated you unfairly at any time, please feel free to address with my chain of command at WSI/NCR HQ. They are Mr. Stephens and Mr. League and can be reached at 301-899-1552. I will continue to research your allegations.

Chuck Carroll
WSI Project Manager

GRANDISON 00309

To: Mr. Carroll, Ruthie Rouse,
From: Grandison, Travis
Re: Assault charge
Date: 3-2-06
Fax: 410-945-7100


      On 3-01-06 I was heading to the 2nd relief mandatory meeting.  Upon arriving to the location of the meeting in the break-room @ 1415 I could hear Foster yelling obscenities and challenging everyone, and issuing open threats.  Shortly after I entered the break-room where the meeting was being held I was greeted by Sgt. Richardson who informed me that I am going to need to attend the mandatory meeting for 1st relief. Shortly after I was informed by Sgt. Richardson that I would need to attend the 1st relief meeting Foster again continues yelling obscenities, continuing to challenge, and issue open threats to everyone in the room.  Foster's statements were followed up by encouragement and additional comments coming from Officer James.  To my surprise there was no intervention by any member of management to remove Foster or even ask him to refrain from making open threats and using fowl language.  It became clear that Foster had begun to direct his comments, challenges, and threats in my direction, and once again his statements were repeated and verbally supported by Officer James.  Once again Sgt. Richardson approaching me stated to me that "I will have my meeting with 1st relief".  I had the feeling at this point that Sgt. Richardson was simultaneously asking me to leave.  As I began to exit the break-room, Foster started to move in my direction.  By the time I had gotten to the exit door Foster was on the other side of Sgt. Richardson. However, Foster was not looking at me, but starring at the ground.  I walked away heading up the steps, and towards the elevators exiting the building.  As I got to the top of the elevators I could hear my fellow co-workers voices beginning to get closer.  I looked over my shoulder and Foster was approaching me quickly from behind, coming up the handicap ramp.  I turned around and faced Foster.  He didn't say anything, just stood there.  Then he threw a punch that hit me on the left side of my face.  Surprised, I just tried to grab and hold him as he continued to throw punches.  I was separated by Officer Robinson and I believe Sgt. Richardson.  I was immediately escorted off the property by Captain Trickey.  I filed a report with Metro DC Police Department around 7pm on 3-1-06.  I was informed by union representatives, fellow officers, and by Mr. Carroll that Foster had been terminated around 1230 on 3-1-06.  The assault occurred at 1415.  I was not aware of his termination until after the assault took place.

Travis Grandison
571-435-4287

To: Mr. Carroll, Ruthie Rouse, Officer McNeil, Sgt. Collins,
From: Grandison, Travis
Re: Grievance for loss of time 2-28-06, and disciplinary action that followed
Date: 3-2-06
Fax: 410-945-7100

     I was not allowed to work by Sgt. Collins at 2245 on 2-28-06 because he stated that I was late to work, and that he did not need me to work. I recently switched to 1st relief, and the 28th of February was scheduled to be my first day working 1st relief. It is my understanding that Sgt. Collins constructs the schedule for the upcoming weeks. I was not informed by Sgt. Collins at all about my start date, scheduled days, or schedule times. There was no schedule posted for the week of 2-27-06 as of 2-26-06 at approximately 2230. I know this for a fact because I was in the command center completing out a leave of absence form, and noticed that there was no schedule posted. Sgt. Collins never stated one word to me about the schedule. However, he did take the time out between his conversation with Officer Dunbar and Officer Moody, to state to me after I asked Officer Dunbar for a pen that "you came in here and knew you needed to write something and didn't bring a pen?" I didn't speak a word. I continued completing the leave of absence form. Sgt. Collins continued to make remarks about me not having a pen to write with, and after enduring this unnecessary conversation I stated to him, "are you serious". I then handed him the leave of absence form and left the command center. Upon passing by post 5/6, Officer Shipman asked when will I report to 1st relief? I stated to him I have no clue; there is no schedule listed and no one has stated anything to me about my start date with 1st relief. He then stated to me that he didn't know what his schedule was or post he would be scheduled for during the week because the schedule had not been posted. However, Officer Shipman did state that "he had overheard that I would be starting 1st relief on 2-3-06.

     After taking the day of 2-27-06 off to formally address and document the recent events that have occurred with me at the GAO building I visited Mr. Carroll's office to deliver the documentation. The conversation between me and Mr. Carroll centered around me switching days on 1st relief with another officer. Within the discussion I understood from Mr. Carroll that I would be starting on 2-28-06, working 2300-0700. This time slot is something that I and Mr. Carroll do not agree with. However Mr. Carroll did state to me on the morning of 2-3-06 that I may have heard him state 0700, and that may have led me to assume I would be working 2300-0700. I am confident that I was told by Mr. Carroll that I would be working 2300-0700. Note that there was nothing written down concerning my scheduled days and times. In addition, I have heard from at least one other officer that the schedule wasn't posted until Monday. I did not go into the command center on Monday to check to see if the schedule was posted, confident that what Mr. Carroll stated to me was correct. I arrived at the command center at approximately 2240, and I was told as stated above that I was late, and that I was not needed. Also, when I stated to Sgt. Collins that Mr. Carroll had informed me that I was due to work 2300-0700, Sgt. Collins stated "no he didn't, I spoke with Mr. Carroll and he stated that he told you, you were due in at 2200. Sgt. Collins also stated "only Officer Pope works the 2300 shift", which was an interesting statement.

I was not late for 1st relief on 2-28-06 for the reason that I was informed incorrectly of the schedule by Mr. Carroll, and or the schedule may have been changed without Mr. Carroll's knowledge. I was not informed of the schedule by the shift supervisor, and the schedule was not posted in the usual amount of time that is consistent, and practiced. Furthermore, and just as important I should not have been sent home for being late. I am not aware of any situation where an officer has been sent home and not allowed to work, due to tardiness. This grievance, I feel is a just grievance and demands a just response. I am requesting that the ultimate decision regarding this grievance be in writing.

Thank you,


Travis Grandison
571-435-4287

74

To: Mr. Carroll, Ruthie Rouse, Officer McNeil, Sgt. Collins,
From: Grandison, Travis
Re: Response to disciplinary write-up issued on 3-2-06 regarding leave of absence
Date: 3-2-06
Fax: 410-945-7100

On 2-26-06 I was sent home and not allowed to work by Foster. I was sent home for not having the proper footwear on (I changed into the correct footwear, despite others and Foster not having the proper footwear on), and for allegedly being argumentative/and later stated as being verbal with a supervisor. After this situation I was very upset to say the least and felt I needed to remove myself from the environment. I recognized this and decided to take a day off to address this situation in a professional manner. The professional manner that I chose would include documenting the incident as well as organizing all other documentation that I had been accumulating over the past months. I went to the command center and filled out a leave form to take 2-27-06 off with pay to deal with my current situation at the GAO building regarding Foster, specifically the harassment, workplace retaliation, and unfair work environment I was experiencing.

In the write-up, Sgt. Collins states that "he told me that the request would not be an excused absence". Sgt. Collins said nothing to me about the request not being excused. If he had I would have simply trashed the request. After I handed Sgt. Collins the request, I left the command center without any words from Sgt. Collins directed at me.

I made the decision to take the day off because of the amount of documentation that had to be organized, written, and typed. I was also dealing with the stresses of this workplace and my unique situation, as well as the increased level of discomfort that I was beginning to experience. I discussed this situation with Mr. Carroll over the phone and was told that I would not be paid for the day off because it was an unexcused absence. I was told by Mr. Carroll that I could ask for vacation pay, but that the reason I called off was an unexcused absence, and that under these circumstances he would not be able to pay me. In addition Mr. Carroll stated basically that my call-off messed up the schedule and that he was short and not able to give breaks. If I had called off sick and put in a leave of absence to be paid sick leave I would have been paid. I did not call off sick. I told the truth, and the reason I called off was to deal with issues that were not being dealt with and had not been dealt with for over five months. These acts of harassment, workplace retaliation, unfairness, and the aiding and abetting of discrimination by management have been going on before November of 2005.

Requesting a day off with pay to deal with a pressing and urgent situation regarding the job and delivering the documentation on the afternoon that I requested off, in my opinion is behaving proactively, responsibly, and sensibly with regards to a potentially hostile situation that eventually culminated in hostility.

This disciplinary action has signaled to me that any efforts on my part to stay out of, or remove myself from harms way was not shared with management. I have mentioned retaliation a number of instances in my last couple of documents and this write-up serves as a prime example of retaliation taken to another level where my efforts to retreat and walk away were not welcome.

GRANDISON 00297

I am requesting that this write-up be terminated, and I compensated with pay for the date of 2-27-06 because of the experiences and circumstances that forced me to remove myself from the environment and address issues that had been ignored time and time again.

Thank you,

Travis Grandison
571-435-4287

GRANDISON 00298

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TRAVIS GRANDISON                )
                                )
                                )
       Plaintiff                )
                                )
       V/                       )        Civil Action No. 1:07-EV-
                                )        00754(RMC)
                                )
WACKENHUT SERVICES, INC. )
                                )
       Defendant                )


## DECLARATION OF LEROY WORSLEY

I Leroy Worsley do hereby depose and state as follows:

1.  During the period of employment of Travis Grandison I was his union representative

2.  I was acutely aware of how Mr. Grandison was treated by management.

3.  Upper Management including Mr. Conry and Mr. Carrol informed me at a meeting that if Mr. Grandison did not stop talking about Management and writing letters, he was going to be terminated. I was told to relay this message to Mr. Grandison and to also tell him "To shut his mouth, do his job and go home"

4.  I did inform Mr. Grandison word for word what was said in (3) above.

5.  Shortly thereafter, Mr. Grandison was assaulted by a former Wackenhut Supervisor.  All the Wackenhut Supervisors at that time were required to go to the Metropolitan Police and file a report about the fight.

6. I learned from others that these supervisors lied and said there was no assault.

7. I also heard one of the supervisors say "He's (meaning Mr. Grandison) is next

   to get out of here"  I recall the individual who said this was Sgt James.

8. A short time after the firing of Mr. Foster, Wackenhut Management

   informed me that they were going to fire Mr. Grandison because he made a

   patrol round without wearing a hat.  I told Mr. Carroll that this was a very

   stupid reason and the company could be sued. He stated that he did not care

   and that he was tired of Mr. Grandison'[s bullshit.

9. I know for a fact that Mr. Grandison was a targeted by Wackenhut.


   I declare under penalty of perjury, that the above statement is true and

   correct to the best of my knowledge, information and belief.


   _____

   Leroy Worsley

   Date_____

To: Ruthie Rouse fax#: 410-945-7100
From: Grandison, Travis
Date: 3-11-06
Re: Statement concerning two rewritten disciplinary reports and grievances.

      On 3-10-06 I was issued two Disciplinary Reports.  These two reports were concerning issues that were already discussed with me in previous reports.  Upon viewing the reports I noticed changes in the text that were not present when the original reports were shown to me.  One of the reports had been clearly rewritten.  I was told by Mr. Carroll that he was confused by my written responses and didn't understand which statement referenced which disciplinary report.  He stated that the headings were identical and he thought that the statements were identical.  First, the headings were not identical.  The headings included a line reading ,'Re:'.  After 'Re:' there is a brief description of the context of the statement.  The intentional inconsistencies and the obvious manipulation by Mr. Carroll Sgt. Richardson and Sgt. Collins are unprofessional, and unethical.

      The two disciplinary reports, concern two separate incidents and two separate violations.  The recently changed report has been tailored by Mr. Carroll and Sgt. Collins to read as if these incidents are the second and third offenses.  The request to suspend me for three days as a result of these reports is driven by Mr. Carroll and Sgt. Collins resubmitting newly written reports, including new information, and stating that the offenses are one in the same.  The original write-ups did not recommend that I be suspended for three days.  In addition, how can the offenses total three offenses when the second offense has yet to be determined, much less the third offense?

      One write-up is concerning me being late to work.  This write-up was originally written and or submitted by Sgt. Richardson.  This occurred due to a schedule miscommunication, where I was told by Mr. Carroll to be at work at a certain time and he states that he "would have never told me that".  In spite of the schedule not being posted, for the week in question I was told by Mr. Carroll that it was my responsibility to find out about the schedule.  Me being in Mr. Carroll's office on 2-27-06 and our conversation included me working 1st relief, is proof that I was taking the responsibility on my own to find out about the schedule.  Mr. Carroll and Sgt. Collins who is the shift supervisor did not exhibit any responsibility concerning the schedule, nor are they accepting any responsibility for this miscommunication as well as many other issues, and events that have occurred at the site.

      The second write-up concerns me requesting leave from work to address the escalating situation with Felton Foster (former supervisor).  I hand delivered this request and nothing was said to me by Sgt. Collins regarding the request being unexcused.  I have never been given any information to what qualifies as an excused or unexcused absence.  As a matter of fact the first disciplinary report that I was issued included a statement that Sgt. Collins stated to me that the leave of absence form would be an unexcused absence.  This information was not included in the second, rewritten disciplinary report.

To: Carroll, Conway, Akinda

From: Grandison

Re: willful insubordination

Date: 5-4-06


I was not being willfully insubordinate. I
was told by Akinda that I could do my
rounds without my hat, identification, and shoes. Akinda
stated to me that after the round was done
then I have to put my gear back on. Akinda
stated this to me after he, I and officer
Pope were on post 5-16 discussing how best to
complete the rounds. Officer Pope initially stated
that I should remove my hat and the female
I would be switching hourly from the round. I stated
to him, with Akinda present that "no if I
did that, they would write me up in a heart
beat ignoring the fact that this is common procedure
on __ relief." Akinda says "no, just do the
rounds, you can remove your gear, just put everything
back on when you finish. Every write-up that you
meaning Mr. Carroll has sent to corporate has been
of a very petty nature. You are subsequently trying

GRANDISON 00248

a catalyst and leader in the objective to have me removed and or terminated from Wackenhut. I have been written up for not having on the proper shoes before and sent home for not having been in uniform, but those occurrences were never listed as willful insubordination. Don't you think its a little late. Don't you see how this is clearly unfair. I know you want to pass yourself off as a good samaritan, and middle-man who is only a messenger, but you have been sending the wrong types of messages.

In addition, I am requesting my entire file (personnel). I'm sure you have no way of retrieving it, so at your earliest convenience, may I get the info. of the person who can do it.

GRANDISON 00250

To: General Accounting Office, Safety and Security Dept., Mr. Walker, Mrs. Elliott, Mr. Trumpet, Mr. Bodle, Mr. Carroll
From: Grandison, Travis
Re: Undue Harassment, Discrimination, and Intimidation
Date: 5-12-06

  The purpose of this notice is to communicate to all possible parties involved in the illegal, unethical, and misguided behavior by GAO employees and contracted employees.
  Most recently there have been GAO employees, led by Mr. Bodle that have been going to my second job, harassing and intimidating my co-workers as well as management. The purpose of Mr. Bodles actions appear to concern gathering information about me. However, Mr. Bodle seems to find it very difficult to contact Wackenhut or me. I have witnessed Mr. Bodle at my second job making inquiries; patroling the building harassing and intimidating everyone he comes in contact with. To my knowledge he has done this on at least three occasions. I am also knowledgeable to the fact that Wackenhut (Mr. Carroll) knows about Mr. Bodle's actions and Mr. Carroll's inaction only shows his full support of Bodle's behavior. This collusion between contractor and federal agency to practice harassment, discrimination, and intimidation is despicable.
  Mr. Bodle's actions have already caused illrepensible damage. I am aware of the intimidating element that individuals feel when encountered by a federal employee. It is crystal clear that Mr. Bodle is using his position in an abusive manner. I am not sure whether or not Mr. Bodle's superiors condone such behavior. However, I am requesting that his superiors instruct Mr. Bodle to cease his activities. In any event I will research and pursue all possible action against all parties involved.

**WACKENHUT**
**SERVICES INCORPORATED**

May 22, 2006

Travis Grandison
705 4th St., NW, # 303
Washington, DC 20001

WACKENHUT N.C.R.
A DIVISION OF
WACKENHUT SERVICES INCORPORATED
4710 AUTH PLACE
SUITE 700
CAMP SPRINGS, MD 20746

Dear Mr. Grandison:

TELEPHONE: (301) 899-1552
FAX: (301) 899-7153

This letter is officially informing you that your employment with Wackenhut Services, Inc. is terminated effective May 25, 2006, based on the following disciplinary action:

*To Wit:*     *Violation of Section 404.19 (2nd Offense), Willful Insubordination.*

*On 7 April while reviewing security tapes of 2 April, 2006  Mr. Carroll observed Ofc. Grandison on Post 16 conducting his Morse Watchman tour. Ofc. Grandison was again not in compliance with established uniform policies. Specifically his shirt collar was open, his tie was to one side and he was not wearing his hat. On March 29th both Mr. Carroll and Ofc. McNeil were present when Mr. Carroll presented Ofc.Grandison with a disciplinary report for the same offense of not properly wearing his tie after being told by the supervisor to put his tie on and to be in full uniform before assuming post. Ofc. Grandison's continued failure to follow policies, after being briefed four days earlier, shows a complete disregard of authority and Wackenhut policies. Ofc. Grandison's willful insubordination is in violation of Wackenhut Article 404.19.*

*Disciplinary Action:  Based on Article 404.19, DISMISSAL*

Your termination is based on the above referenced event along with the other behavior previously discussed and documented in your personnel file.

All equipment and credentials must be returned, to include your Company ID.  Your complete uniform as issued to you at the start of your employment must be returned after being professionally laundered or dry-cleaned.

If you have any questions, please contact us.

Sincerely,

K. A. Conry
Vice President/General Manager

KAC:kpp

cc: Personnel File
    Project Manager/GAO



*Professionalism With Integrity®*

GRANDISON 00246

to terminate me for uniform issues, knowing that
I have been treated unfairly by you and the
supervisors on the issue. Everyone knows and your
tapes would prove and you know that there are
plenty of officers who are not in compliance on a
daily basis and never face the punishment I
have none. In regards to my tardibnesses, there
are others who are tardy everyday and have
face the punishment I have faced. In our meeting
today you stated that Sgt. Armstrong makes arrangements
with other officers to work for him to arrive
because he is late so often, that is truly an
or failure to observe scheduled hours of work, Mr. yet.
If I were, he would I be allowed the
same treatment? Never once Mr. Carroll you appear
or maybe you are absent minded about what
goes on in the CAO building because you only
seem to recognize and not my actions. You
ignoring the obvious standards at me being targeted
and ignoring and failing to investigate any wrongdoings
that I have denied clearly states to me and
everyone knowledgeable to my situation that you
are not only ignoring issues at will, but are

GRANDISON 00249