# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| TRAVIS GRANDISON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-754 (RMC) |
| | ) | |
| WACKENHUT SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

Travis Grandison worked for Wackenhut Services, Inc. for about thirteen months. During that time Wackenhut disciplined Mr. Grandison ten times for violating workplace rules, the last of which prompted Wackenhut to sever its employment relationship with him. This lawsuit ensued. Mr. Grandison alleges that Wackenhut discriminated and retaliated against him in violation of the District of Columbia Human Rights Act ("D.C. Human Rights Act"), D.C. Code § 2-1401.01 *et seq.* Mr. Grandison further alleges that Wackenhut defamed him and interfered with his contractual relations. Before the Court is Wackenhut's Motion for Summary Judgment. Wackenhut argues that Mr. Grandison's D.C. Human Rights Act claims fail as a matter of law because there is no evidence that Mr. Grandison's race, gender, matriculation, or his filing discrimination charges with the Equal Employment Opportunity Commission ("EEOC") motivated Wackenhut's decision-making. Wackenhut further argues that Mr. Grandison's tort claims fail as a matter of law because there is no evidence that Wackenhut either defamed Mr. Grandison or interfered with his contractual relations. Because there is no genuine issue of material fact with respect to these claims, the Court finds that Wackenhut is entitled to judgment as a matter of law and will grant Wackenhut's motion.

# I.  FACTUAL BACKGROUND

Travis Grandison is an African American male who was employed by Wackenhut as a special police officer at the Government Accountability Office ("GAO") in Washington, D.C. from April 5, 2005 to May 25, 2006.  While Mr. Grandison worked for Wackenhut, he accumulated the following list of workplace infractions:

- On June 1, 2005, Mr. Grandison was disciplined for opening his post ten minutes late;
- On October 15, 2005, Mr. Grandison was disciplined for calling off to attend training he was not scheduled or approved to attend;
- On October 29, 2005, Mr. Grandison was disciplined for oversleeping and arriving at work two hours and fifteen minutes late;
- On November 21, 2005, Mr. Grandison was disciplined for being inattentive to duty but not asleep after he was spotted inside a guard booth with his feet on the desk and his head lolling on the window;
- On January 13, 2006, Mr. Grandison was disciplined for opening his post twenty minutes late;
- On February 27, 2006, Mr. Grandison was disciplined for (i) failing to report to work and (ii) receiving a personal facsimile at a GAO facsimile machine;
- On February 28, 2006, Mr. Grandison was disciplined for reporting to work fifty-five minutes late;
- On March 15, 2006, Mr. Grandison was disciplined for rolling-up his sleeves and for refusing to wear his tie after he was instructed to do so;
- On April 2, 2006, Mr. Grandison was disciplined for walking his rounds hatless, with his shirt collar open, and with his tie off to one side days after he was briefed on March 29, 2006 about Wackenhut's uniform policy.

Following this last infraction — Mr. Grandison's second offense of willful insubordination — Wackenhut terminated Mr. Grandison's employment.[1]  Mr. Grandison responded by filing this action in D.C. Superior Court, which Wackenhut removed to this Court on the basis of diversity

---

[1]  Mr. Grandison's employment was not terminated until May 25, 2006 because he was off work following an April 2, 2006 on-the-job accident.

jurisdiction.[2]

The Complaint alleges ten causes of action:[3]  In Count I (Race Discrimination), Mr. Grandison alleges that Wackenhut violated the D.C. Human Rights Act by terminating his employment because of his race; in Count II (Sex Discrimination), Mr. Grandison alleges that Wackenhut violated the D.C. Human Rights Act by disciplining him for acts that did not cause similarly situated female officers to be disciplined; in Count IIIA (Retaliation), Mr. Grandison alleges that Wackenhut violated the D.C. Human Rights Act by retaliating against him for filing discrimination charges with the EEOC;[4] in Count IIIB (Intentional Infliction of Emotional Distress), Mr. Grandison alleges that the manner in which Wackenhut terminated his employment was so outrageous as to constitute the tort of intentional infliction of emotional distress; in Count IV (Breach of Contract), Mr. Grandison alleges that Wackenhut terminated his employment in breach of contract; in Count V (Slander/Defamation *Per Se*), Mr. Grandison alleges that Wackenhut defamed him by making false statements about him to another employer; in Count VI (Breach of Covenant of Good Faith and Fair Dealing), Mr. Grandison alleges that Wackenhut terminated his employment in breach of the covenant of good faith and fair dealing inherent in the parties' employment contract;

---

[2]  Diversity jurisdiction in this Court is proper, under 28 U.S.C. § 1332, because (1) Mr. Grandison is a citizen of the District of Columbia and Wackenhut is a Florida corporation with its principal place of business in that State, and (2) the amount in controversy exceeds $75,000 (*see* Compl. at 11-12 (seeking compensatory damages of $75,000 and punitive damages of $500,000)).

[3]  The Complaint erroneously contains two causes of action labeled "Count III."  The Court refers to the Retaliation Count as "Count IIIA" and the Intentional Infliction of Emotional Distress Count as "Count IIIB."

[4]  On March 13, 2006, Mr. Grandison filed a charge of discrimination with the EEOC alleging that Wackenhut disciplined him because of his race.  On March 30, 2006, the EEOC dismissed the charge and issued a right to sue letter.  On May 11, 2006, Mr. Grandison filed a second discrimination charge with the EEOC, which was dismissed because Mr. Grandison filed this action.

in Count VII (Discriminatory Discharge), Mr. Grandison alleges that Wackenhut violated the D.C.

Human Rights Act by terminating his employment because of his race, sex, and status as a college

graduate; in Count VIII (Procedural Due Process), Mr. Grandison alleges that Wackenhut violated

his procedural due process rights; and, finally, in Count IX (Interference With Contract), Mr.

Grandison alleges that Wackenhut tortiously interfered with his contractual relations.

On September 25, 2007, the Court issued an Order dismissing Count IIIB (Intentional

Infliction of Emotional Distress), Count IV (Breach of Contract), Count VI (Breach of Covenant of

Good Faith and Fair Dealing), and Count VIII (Procedural Due Process).[5]  On June 9, 2008, after

conducting discovery, Wackenhut moved for summary judgment on the remaining claims.  That

motion has now been fully briefed and is ripe for decision.

## II.  SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be

granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56 (c); *Anderson v.

Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  Moreover, summary judgment

is properly granted against a party that "after adequate time for discovery and upon motion . . . fails

to make a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  To

determine which facts are "material," a court must look to the substantive law on which each claim

_____

[5]  *See Grandison v. Wackenhut Servs., Inc.*, 514 F. Supp. 2d 12, 15, 18 (D.D.C. 2007).

rests. *Anderson*, 477 U.S. at 248. A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.* In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Id.* If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

### III. ANALYSIS

Mr. Grandison disputes just two facts as to which Wackenhut asserts there is no genuine issue. *See* Pl.'s Statement of Material Facts Which Are In Dispute. The first fact disputed by Mr. Grandison is that by signing his disciplinary reports he indicated his agreement with those reports. *See id.* ¶ 1. The second fact disputed by Mr. Grandison is that Wackenhut first learned of Mr. Grandison's EEOC charges when it received a copy of those charges. *See id.*

¶ 2.  As to all other material facts, the Court will treat Wackenhut's Statement of Material Facts As To Which No Genuine Issue Exists as conceded.  *See* LCvR 7(h); *Hubbard v. United States*, 2008 WL 1862299, at *2 (D.D.C. Apr. 24, 2008).

## A.    Tort Claims

### 1.    Interference With Contract

Mr. Grandison alleges that Wackenhut tortiously interfered with his contract with another employer — Startech Security Company — when Wackenhut "intentionally *attempted* to procure its breach" by Startech.  Compl. ¶ 69 (emphasis added).  However, the tort of intentional interference with contractual relations requires a plaintiff to prove that the defendant intentionally induced an actual breach of contract that resulted in damages.  *See*, *e.g.*, *Paul v. Howard Univ.*, 754 A.2d 297, 308-09 (D.C. 2000).  Because the Complaint does not allege that Wackenhut intentionally induced Startech to actually breach its employment contract with Mr. Grandison, and because the undisputed evidence shows that Startech has not actually breached that contract, *see* Def.'s Statement of Material Facts ¶ 120, Mr. Grandison's interference with contract claim (Count IX) fails as a matter of law.

### 2.    Defamation

Mr. Grandison alleges that *representatives of GAO* defamed him by making disparaging remarks about him to his supervisors at Startech.  Compl. ¶ 25.  While Mr. Grandison asserts, based on "information and belief," that Wackenhut "approved and instigated" those disparaging remarks, *id.*, there is no evidence that Wackenhut did so.  *See* Def.'s Statement of Material Facts ¶¶ 116-18.  Accordingly, Mr. Grandison's defamation claim (Count V) fails as a matter of law.  *See*, *e.g.*, *Oparaugo v. Watts*, 884 A.2d 63, 76 (D.C. 2005) (plaintiff must prove

that *the defendant* made a defamatory statement about plaintiff).

**B.      D.C. Human Rights Act Claims**

1.      Discrimination

Mr. Grandison alleges that Wackenhut discriminated against him on the basis of his race (Count I), sex (Count II), and status as a college graduate (Count VII).[6] But Mr. Grandison has failed to substantiate any of his discrimination allegations with evidence. *See* Def.'s Statement of Material Facts ¶ 76. And Wackenhut has met its burden of producing legitimate, non-discriminatory reasons for disciplining Mr. Grandison and terminating his employment — his multiple infractions of workplace rules. *See id.* ¶¶ 8, 14, 18-19, 23,  27, 33, 37, 46, 57, 70. Therefore, no reasonable jury could find that Wackenhut's asserted reasons were not the actual reasons and that Wackenhut unlawfully discriminated against Mr. Grandison. *See Adeyemi v. District of Columbia*, 525 F.3d 1222, 1226 (D.C. Cir. 2008); *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008).[7] Mr. Grandison's discrimination claims (Counts I, II, and VII) thus will be dismissed.[8]

---

[6] The D.C. Human Rights Act prohibits employment discrimination and harassment on the basis of an individual's "matriculation." D.C. Code § 2-1402.11(a)(1). That term is defined as "the condition of being *enrolled in* a college, or university; or in a business, nursing, professional, secretarial, technical or vocational school; or in an adult education program." *Id.* § 2-1401.02(18) (emphasis added). Because Mr. Grandison is a college graduate and is not currently enrolled in college, his matriculation discrimination claim fails as a matter of law.

[7] Employment discrimination claims under the D.C. Human Rights Act are analyzed using the same legal framework as federal employment discrimination claims. *See McFarland v. George Wash. Univ.*, 935 A.2d 337, 346 (D.C. 2007).

[8] Mr. Grandison also appears to contend, though not in a separate count, that Wackenhut subjected him to a hostile work environment because of his race and his sex, and because he graduated from college. *See* Compl. ¶ 10. To the extent that Mr. Grandison alleges a hostile work environment claim, the Court finds that his hostile work environment claim fails as a matter of law for the same reasons that his discrimination claims fail as a matter of law — lack of evidence.

2.      Retaliation

Mr. Grandison's sole remaining claim is that Wackenhut violated the D.C. Human Rights Act by retaliating against him for filing discrimination charges with the EEOC (Count IIIA).  However, his only evidence of retaliation is that Wackenhut suspended him three days after he filed his first EEOC charge and decided to terminate his employment eleven days after he filed his second EEOC charge.  While it is true that causation may be inferred from a close temporal proximity between the plaintiff's protected activity and the defendant's adverse employment action, *see, e.g., Mason v. DaVita Inc.*, 542 F. Supp. 2d 21, 31 (D.D.C. 2008), that inference can be rebutted by evidence that the defendant was motivated by a legitimate, non-retaliatory reason.  *See, e.g., Carter v. Greenspan*, 304 F. Supp. 2d 13, 28 (D.D.C. 2004).[9]  As discussed above, Wackenhut has come forward with legitimate, non-retaliatory reasons for suspending Mr. Grandison and terminating his employment — Mr. Grandison's repeated flouting of workplace rules.  *See* Def.'s Statement of Material Facts ¶¶ 37-41, 46-47, 67-75.  Mr. Grandison has not shown these reasons to be pretextual.  *See id.* ¶ 76.  Accordingly, no reasonable jury could find that Wackenhut's asserted reasons were not the actual reasons and that Wackenhut unlawfully retaliated against Mr. Grandison.  *See Adeyemi*, 525 F.3d at 1226; *Brady*, 520 F.3d at 494.  The Court will therefore dismiss Mr. Grandison's retaliation claim (Count IIIA).

---

[9]  Employment retaliation claims under the D.C. Human Rights Act are analyzed using the same legal framework as federal employment retaliation claims.  *See Howard Univ. v. Green*, 652 A.2d 41, 45 (D.C. 1994).

**IV.  CONCLUSION**

For the foregoing reasons, Wackenhut's Motion for Summary Judgment [Dkt. #

29] will be granted, and all remaining causes of action (Counts I, II, IIIA, V, VII, and IX) will be

dismissed.  A memorializing Order accompanies this Memorandum Opinion.


DATE: November 13, 2008             /s/
            ROSEMARY M. COLLYER
            United States District Judge